## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:20-cv-00825-DDD-KMT

ANGEL AGUAYO,

     Plaintiff,

v.

JOHN MARTINEZ, TIMOTHY S. ROBBINS, MATTHEW T. AL-
BENCE, CHAD WOLF, JOHN FABBRICATORE, WILLIAM P. BARR,
and JOHNNY CHOATE,

     Defendants.

---

## ORDER

---

Before the Court are Plaintiff Angel Aguayo's petition for a writ of habeas corpus (Doc. 1, the "Petition"), motion for temporary restraining order (Doc. 17, the "Emergency Motion"), and his Motion for Judgment as a Matter of Law (Doc. 35, the "Motion for Judgment"). In each filing, Mr. Aguayo seeks his immediate release from the Aurora Contract Detention Facility (the "Detention Facility") where he is being held in pre-removal immigration detention. He argues that the Detention Facility has failed to prevent the spread of the novel coronavirus that causes COVID-19, thus violating his constitutional rights. In the alternative, he argues that his removal proceedings have violated his constitutional right to due process in various ways.

After careful review of the parties' positions, the Court has determined that Mr. Aguayo is not entitled to relief. The Court thus **DENIES**

Mr. Aguayo's Petition (Doc. 1), Emergency Motion (Doc. 17), and Motion for Judgment (Doc. 35).

## BACKGROUND

Mr. Aguayo is a citizen of Mexico who is currently detained by Immigration and Customs Enforcement ("ICE") at the Detention Facility in Aurora. Doc. 1, ¶ 2; Doc. 28 at 2. He alleges that he has resided in Utah since 1994. Doc. 1, ¶ 2. In late February 2019, Mr. Aguayo was arrested in Provo, Utah, and subsequently pleaded guilty to two counts of possession of a forged writing in violation of Utah law. *Id.* ¶ 23. He was sentenced to a term of suspended confinement on July 29, 2019. *Id.* Mr. Agauyo was released to ICE custody the next day. *Id.* ¶ 24. Mr. Aguayo has been in removal proceedings since July 30, 2019. *Id.* ¶ 39. On October 28, 2019, an immigration law judge ("ILJ") determined that his underlying convictions are crimes of moral turpitude, thus subjecting Mr. Aguayo to mandatory pre-removal detention under 8 U.S.C. § 1226(c). *Id.* ¶ 41. The Board of Immigration Appeals ("BIA") upheld the decision of the BIA on May 1, 2020, ruling that Mr. Aguayo's convictions are crimes of moral turpitude. Doc. 36 at 1.

For some time since before his removal proceedings began, Mr. Aguayo has been pursuing a change in his immigration status to that of a lawful permanent resident. To date, his attempts have been rejected, but he has a renewed application to adjust his status that is currently pending before U.S. Citizenship and Immigration Services ("USCIS"). Doc. 1 ¶¶ 14, 34–38. While his application to adjust his status is pending, he has voluntarily moved for eight continuances of his removal proceedings, which the ILJ has granted. *Id.* ¶ 36; Decl. of F. Davison, Doc. 28-1, ¶¶ 10–11, 13, 15, 17–20. These voluntarily requested continuances

have resulted in abnormally long removal proceedings—a little more than nine months to date.

Mr. Aguayo filed his Petition requesting immediate release under 28 U.S.C. § 2241 on March 26, 2020. His petition asserts five counts:

- In count one, he alleges that Defendants Timothy Robbins, Matthew Albence, Chad Wolf, William Barr, and Johnny Choate's (collectively "Defendants") failure to protect him from the virus that causes COVID-19 has violated his right to due process under the Fifth Amendment. Doc. 1 ¶¶ 80–84.

- In count two, he alleges that his now nine-month detention violates his constitutional rights. *Id.*, at ¶¶ 85–95.

- In count three, he alleges that he is being wrongfully detained without bail under 8 U.S.C. § 1226(c) because the ILJ improperly determined he had committed a crime of moral turpitude. *Id.*, at ¶¶ 96–99.

- In count four, he alleges that the ILJ improperly denied his motion to administratively close the removal proceedings while his requests to adjust his immigration proceedings are pending. *Id.*, at ¶¶ 100–02.

- And in count five, he alleges that the Provo police had no authority to detain him on behalf of ICE. *Id.*, at ¶¶ 103–11.

Mr. Aguayo filed an emergency motion for a temporary restraining order under Federal Rule of Civil Procedure 65 on March 30, 2020. Doc. 17. Because the Court found the standard for issuing a TRO without notice had not been met, see Fed. R. Civ. P. 65(b)(1), the Court ordered the Defendants to show cause why the Petition should not be granted or

why a preliminary injunction should not be granted. Doc. 25. On May 5, 2020, Mr. Aguayo filed his Motion for Judgment, requesting the Court adjudicate all matters of law in his Petition. Doc. 35.

## DISCUSSION

### I.   The Petition for a Writ of Habeas Corpus

#### A.  The Court Lacks Jurisdiction Over Mr. Aguayo's Request for Immediate Release Based on COVID-19

Count one of Mr. Aguayo's Petition seeks immediate release on the ground that the Defendants' failure to protect him from the threat posed by COVID-19 violates his constitutional rights. But the Court lacks jurisdiction over this claim because it challenges the conditions of his confinement, not the fact or duration of it. This claim presents an identical jurisdictional issue to the one addressed by the Court in *Basri v. Barr*, 1:20-cv-00940-DDD, 3–11 (D. Colo., May 11, 2020). As explained in *Basri*, a conditions-of-confinement claim cannot be asserted in a petition for writ of habeas corpus under binding Tenth Circuit precedent:

> Though the Supreme Court has not set the precise boundaries of habeas actions, it has distinguished between habeas actions and those challenging conditions of confinement. This court has "endorsed this distinction." In this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action.

*Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012); *see also Standifer*, 653 F.3d at 1280 ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits … not through federal habeas proceedings."). Count one of Mr. Agauyo's

petition is a claim challenging the conditions of confinement because, if COVID-19 disappeared tomorrow or he was provided a perfectly socially distanced cell, he would still be lawfully detained. *See Basri*, at 9. A civil-rights action is the proper vehicle for this claim—not a habeas petition. For the reasons stated in *Basri*, the Court lacks jurisdiction to address count one of Mr. Aguayo's and thus dismisses this claim.

### B. Mr. Aguayo's Nine-Month Detention is Not Unconstitutional.

In count two of his Petition, Mr. Aguayo argues that his now nine-month detention without bond under 8 U.S.C. § 1226(c) violates his right to due process under the Fifth Amendment to the Constitution. He requests immediate release or, in the alternative, an individualized bond hearing. Doc. 17 at 67. Because this claim does, in fact, argue that continued detention under any circumstances is unconstitutional, it is properly raised in a habeas corpus petition. Nevertheless, it fails on the merits because his detention under Section 1226(c) does not violate the Constitution.

"Under federal immigration law, aliens present in this country may be removed if they fall 'within one or more ... classes of deportable aliens.'" *Nielsen v. Prieap*, 139 S. Ct. 954, 959 (2019) (quoting 8 U.S.C. § 1227(a)). Mr. Aguayo's argument primarily concerns one provision governing the detention of aliens, like Mr. Aguayo, who are subject to removal: 8 U.S.C. § 1226. Section 1226 provides, as a general matter, that an alien subject to removal can be detained pending his removal proceedings: "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). This detention is mandatory if the alien has committed certain crimes. *Id.* § 1226(c) ("The Attorney General shall take into custody any alien who" has committed

certain crimes.). The Parties agree that Mr. Aguayo is being mandato-
rily detained under Section 1226(c) and has not been released on bond
as a result.

Mr. Aguayo's argument that his nine-month detention violates the
Constitution runs counter to *Demore*. There, the Court held that deten-
tion under Section 1226(c) pending removal proceedings is constitu-
tional: "[Section 1226(c)] governs detention of deportable criminal al-
iens *pending their removal proceedings*." 538 U.S. at 527 (emphasis in
original). The Court reasoned that although aliens are entitled to due
process, the due-process protections afforded in removal proceedings are
necessarily less than in other contexts. *Id.* at 522. This is because "any
policy toward aliens is vitally and intricately interwoven with contem-
poraneous policies in regard to the conduct of foreign relations, the war
power, and the maintenance of a republican form of government." *Id.*
(quoting *Mathews v. Diaz*, 426 U.S. 67, 81 n.17 (1976)). So the Court
explained that it "has firmly and repeatedly endorsed the proposition
that Congress may make rules as to aliens that would be unacceptable
if applied to citizens." *Id.* (collecting cases). In the light of these princi-
ples, the Court ruled that the Fifth Amendment does not require a bond
hearing or release for an alien detained under Section 1226(c). *Id.* at
531. Even though the Court noted, as explained, that it had long viewed
detention during removal as constitutionally permissible, detention
without bond under Section 1226(c) was particularly justified because
that provision "serves the purpose of preventing deportable criminal al-
iens from fleeing prior to or during their removal proceedings, thus in-
creasing the chance that, if ordered removed, the aliens will be success-
fully removed." *Id.* at 528.

*Demore* is on all fours with Mr. Aguayo's case. Under *Demore*, deten-
tion without bond under Section 1226(c) is a constitutionally permissible

aspect of the removal proceedings. *Id.* at 531. And indeed, like the detainee in *Demore*, Mr. Aguayo's prolonged detention is largely of his own making. He has requested—and been granted—eight continuances of his removal proceedings to permit his parallel application for an adjustment of status to be resolved before any final order of removal is entered. *See* Decl. of F. Davison, Doc. 28-1 , ¶¶ 10–11, 13, 15, 17–20 (Testifying that Mr. Aguayo has moved for eight continuances of his removal proceedings). It is worth noting, however, that this is not Mr. Aguayo's first attempt to adjust his immigration status. He avers that he has tried to do so multiple times in the past, but each of those attempts was rejected.

Mr. Aguayo urges the Court to apply the multi-factor balancing test from *Singh v. Choate*, No. 19-CV-00909-KLM, 2019 WL 3943960 (D. Colo. Aug. 21, 2019), which held that a 20-month pre-removal detention violated the Constitution. *See id.* at *7. The Court respectfully declines to do so. While the specific holding of *Demore* was that the Ninth Circuit erred in holding that six months of pre-removal detention under Section 1226(c) was presumptively illegal, its holding was broader than the underlying facts: "detention during removal proceedings"—even longer-than-average detention—"is a constitutionally permissible part of that process" so long as there is no evidence that the government isn't improperly or arbitrarily delaying removal. 538 U.S. at 531. Indeed, the Supreme Court has since explained that detention under Section1226(c) is constitutional because it is necessarily limited—it ends at the conclusion of removal proceedings. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (noting that in *Demore*, the Court held that "[Section] 1226(c) has 'a definite termination point': the conclusion of removal proceedings."). Given this, the Supreme Court has warned lower courts not to graft "some arbitrary time limit" onto pre-removal detention under Section 1226(c). *Id.* Perhaps it's possible that detention under Section

1226(c) might become unreasonable if the government, say, arbitrarily extends or suspends detention or removal proceedings. *See Demore*, 538 U.S. at 531–32 (Kennedy, J., concurring) (noting that a bond hearing might be required if "continued detention became unreasonable or unjustified"); *see also Singh*, 2019 WL 3943960, at *4 (relying on Justice Kennedy's concurrence in *Demore* to craft a multi-factor balancing test).[1] But Mr. Aguayo's detention continues to be tethered to the government's legitimate interest in detaining him during his removal proceedings. *See Id.* at 512. He offers arguments why he shouldn't be removed and why he is being held improperly under Section 1226(c) without bond. But those arguments don't undermine the rule announced in *Demore*—detention of criminal alien is permissible as long as the government is pursuing removal. And as explained, it appears that much of the delay is due to Mr. Aguayo's own actions, not the government's.[2] Nine months is a long time for a removal process, to be sure. But in these circumstances, it is not unconstitutional. The Court thus denies count two of Mr. Aguayo's Petition.

---

[1]   Even if the *Singh* test applied, Mr. Aguayo's Petition would fail. The total length of time he's been detained is only three months more than the detainee in *Demore*, and far shorter than that in *Singh*. And the duration of his detention will largely be determined by him, because, as explained, the delay has largely been based on his own efforts to continue his removal proceedings.

[2]   It appears that by delaying removal proceedings, Mr. Aguayo hopes to get a favorable decision on his visa application before removal is accomplished. That is an understandable strategy for him to choose, but he cannot then complain about the length of detention that choice has caused.

### C. The Court Lacks Jurisdiction Over Counts Three, Four, and Five of the Petition.

#### 1. Count Three: Mr. Aguayo's Challenge to Mandatory Jurisdiction Under 8 U.S.C. § 1226(c)

In count three of the Petition, Mr. Aguayo argues that the ILJ improperly determined he committed a crime of moral turpitude and is thus subject to mandatory detention under 8 U.S.C. § 1226(c). But the Court cannot reach the merits of this argument, because it lacks jurisdiction to decide it.

There are at least three statutory provisions that deprive the Court of jurisdiction to decide Count three of Mr. Aguayo's Petition.

First, 8 U.S.C. § 1252(b)(9) bars "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter," except for review of a "final order," which the parties agree hasn't been issued in Mr. Aguayo's case. There can be little doubt that count three challenges the "interpretation and application" of a statutory provision that was made during his pending removal proceedings. Mr. Aguayo's argument is, in essence, that the ILJ misinterpreted and misapplied 8 U.S.C. § 1226(c) to his underlying criminal conviction when the ILJ concluded that it was a crime of moral turpitude. Section 1252(b)(9) expressly strips courts of jurisdiction of habeas petitions like Mr. Aguayo's: "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, …. to review such an order or such questions of law or fact." Congress must speak clearly when it strips courts of habeas jurisdiction, *Demore*, 538 U.S. at 517, and it has done so here.

Second, 8 U.S.C. § 1226(e) bars judicial review of "the Attorney General's discretionary judgment regarding the application of this section … . No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Again, whether Mr. Aguayo is subject to mandatory detention under Section 1226(c) clearly falls within the ambit of this language. Mr. Aguayo's claim that he has been improperly detained under Section 1226(c) necessarily questions the "Attorney General's discretionary judgement" regarding whether his underlying conviction was a crime of moral turpitude.

Third, 8 U.S.C. § 1252(a)(5) makes a petition for review filed with the court of appeals—not the district court—the exclusive means to review an order of removal:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter*, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

*Id.* (emphasis added). Like Section 1252(b)(9) and Section 1226(e), Section 1252(a)(5) evinces Congress's desire to prevent challenges to removal proceedings until a final removal order has been entered. *See also id.* § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien

as of right."). And any challenge to such an order must be brought in a petition for review in the applicable court of appeals, not in a habeas petition in a district court.

Mr. Aguayo argues that these provisions present no jurisdictional bar to count three in his Petition. As to Section 1252(b)(9) and Section 1226(e), he says the jurisdictional holding of *Nielsen v. Preap*, 139 S. Ct. 954 (2019), is on "all fours" with his claim in count three. Doc. 17 at 38 (citing *Vasquez Cruz v. Barr*, No. 19-CV-05251-LHK, 2019 WL 6327576, at *3 (N.D. Cal. Nov. 26, 2019)). It isn't.

*Nielsen* involved a putative class action challenge by removable aliens who had been detained without bond under the mandatory detention provision Section 1226(c). *Id.* at 960–61. The class did not dispute that their underlying convictions required mandatory detention under Section 1226(c). *Id.* Instead, they argued that the time lag (in one instance, years) between their release from criminal custody and the beginning of their removal proceedings and detention rendered Section 1226(c) inapplicable. *Id.*

The Court ruled that neither Section 1226(e) nor Section 1252(b)(9) barred jurisdiction over that case. *Id.* at 961–62. But this was because the Court has carved out an exception to Section 1226(e) when a lawsuit challenges "the extent of the Government's detention authority under the 'statutory framework' as a whole." *Id.* at 962 (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018)). *See also id.* at 975 (Thomas, J., concurring in part and dissenting in part) ("The Court once again reads [Section 1226(e)] as permitting judicial review for challenges to the 'statutory framework as a whole.'")). And Section 1252(b)(9) did not apply because the petitioners were "not challenging the decision to detain them in the first place." *Id.* at 962. By contrast, Mr. Aguayo is

not challenging the statutory framework as a whole—he's challenging its application in his case—so Section 1226(e) applies and strips the Court of jurisdiction. Likewise, Mr. Aguayo is challenging "the decision to detain [him] in the first place," which is precisely the kind of claim *Nielsen* said falls within the ambit of Section 1252(b)(9)'s jurisdictional bar. *Id.*

Mr. Agauyo likewise cites *Demore* and *Zadvydas* for the proposition that "the Supreme Court has repeatedly held that challenges to mandatory detention involving questions of law are reviewable in habeas." Doc. 31 at 12. True, but both decisions are distinguishable. *Demore*, as explained, carved out an exception to Section 1226(e) for lawsuits that challenge the "statutory framework" as a whole. 538 U.S. at 517. And the Court concluded it had jurisdiction in *Zadvydas* because the challenge there concerned the extent of the Attorney General's discretion under the immigration laws, not a specific application of that discretion like Mr. Aguayo asserts. 533 U.S. at 688.

The exceptions the Supreme Court has carved out of Congress's efforts to strip district courts of jurisdiction over removal proceedings are limited to broad-based challenges to the immigration laws themselves. This is not such a case. Mr. Aguayo asks this Court to invalidate a particular application of those laws by the ILJ. Under Section 1226(e), Section 1252(b)(9), and Section 1252(a)(5), the Court has no power to adjudicate count three of the Petition.

## 2.  Count Four: Mr. Aguayo's Request for Administrative Closure

In count four of his Petition, Mr. Aguayo argues that the ILJ improperly refused to grant Mr. Aguayo's motion for administrative closure in violation of the Immigration and Nationality Act and the regulations thereunder. Administrative closure is "a docket management tool that is used to temporarily pause removal proceedings, and remove a case from an Immigration Judge's active calendar or from the Board's docket." *In re Castro-Tum*, 27 I. & N. Dec. 271, 271 (2018) (citations and internal quotation marks omitted)). Mr. Aguayo moved to administratively close his removal proceedings so he could pursue an adjustment in his immigration status. Doc. 17 at 45–52. The ILJ denied this motion on the ground that an ILJ lacked authority to do so. *See id.* at 45. Mr. Aguayo argues this was error and that the Court should rule that the ILJ had authority to grant Mr. Aguayo's motion. *Id.* at 45–46.

The Court lacks jurisdiction over count four for the reasons already explained. The ILJ's ruling implicates Section 1252(b)(9)'s jurisdictional bar because reversing that ruling would entail "judicial review of [a] question[] of law"—specifically, the "interpretation and application of … statutory provisions, arising from any action taken or proceeding brought to remove an alien." Likewise, Section 1226(e) strips the Court of jurisdiction over this issue because it was a discretionary decision made during removal. And Section 1252(a)(5) means that, even if review of Mr. Agauayo's claim were possible, a habeas petition filed in this Court is the wrong vehicle to do so.

Mr. Aguayo argues that not permitting review of his removal proceedings in a habeas petition renders him without an effective remedy. Doc. 31 at 15. But that's not so. Mr. Aguayo is entitled to appeal the ILJ's ruling on administrative closure to the BIA and to the Tenth

Circuit after a removal order is entered. That this procedure isn't as expeditious as he'd hope does not mean it is not an effective remedy. Indeed, Congress has attempted to streamline the removal review process precisely so claims like Mr. Aguayo's are heard as efficiently as possible.

### 3.    Count Five: Unlawful Detention and Arrest

In count five of his Petition, Mr. Aguayo argues that his arrest was *ultra vires* and he is being held in violation of the Immigration and Nationality Act. He says that the Utah police officers that arrested him lacked the specific authorization to do so, and thus his detention is invalid. Doc. 17 at 54–56. Likewise, he argues that his arrest was invalid because no notice to appear had been issued to him when he was arrested. *Id.* at 57.

The Court lacks jurisdiction over this claim as well. The actions Mr. Aguayo challenges were "taken … to remove an alien" and are thus unreviewable by this Court under Section 1252(b)(9). Indeed, Mr. Agauyo doesn't quarrel with this statutory conclusion. Instead, he says that refusing jurisdiction over count five would render the challenged actions unreviewable. But again, that's not true. He has had the opportunity to appear before an ILJ and can appeal any decisions by the ILJ to the BIA and then to the Tenth Circuit. That he doesn't wish to follow that process for review doesn't change the fact that avenues for review are available to him. The Court thus denies count five of his Petition.

## II.    The Motion for Preliminary Injunction and Motion for Judgment as a Matter of Law

Because the Court denies Mr. Aguayo's Petition on the merits, his motion for a temporary restraining order (Doc. 17), which the Court has construed as a motion for preliminary injunction (Doc. 25), is moot. The

Court denies Mr. Aguayo's motion for judgment (Doc. 35) as a matter of law for the same reasons it denies his Petition.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Mr. Aguayo's Petition (Doc. 1) and Motion for Judgment as a Matter of Law (Doc. 35) are **DENIED**, and his Motion for a Temporary Restraining Order (Doc. 17) is **DENIED AS MOOT**.

DATED: May 12, 2020    BY THE COURT:

Hon. Daniel D. Domenico